### HALGES v. CENTRAL R. CO. OF NEW JERSEY.

### No. 393.

Circuit Court of Appeals, Second Circuit.

May 9, 1932.

Charles E. Miller, of New York City, for appellant.

Thomas J. O'Neill, of New York City (Charles D. Lewis, of White Plains, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

### PER CURIAM.

The action was brought under the Federal Employers' Liability Act (45 USCA §§ 51–59) for the death of a car inspector, while engaged in interstate commerce in the defendant's railway yard. At the close of the evidence each side moved for a verdict, and the judge decided in the plaintiff's favor, leaving the assessment of damages to the jury. As the defendant did not ask to go to the jury after the direction of the verdict against it, the case comes up with any disputed facts and inferences to be drawn from them, as conclusively settled against it as though the jury had found the verdict. Empire State Cattle Co. v. Atchison, T. & S. F. Ry., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70; Fire Association v. Mechlowitz, 266 F. 322 (C. C. A. 2).

Halges, the deceased, was a car inspector at work at night in the yard, about to inspect a string of fifty-five cars fully occupying track No. 5, which ran east and west. To the north, and parallel with it, was track 4, just far enough off to allow a man to pass between the two tracks, when cars were upon each. How many cars were upon track four does not appear, except that it could still accommodate thirty-six more. A rule of the railroad provided that men should not work under or about cars unless blue lights were placed at either end; instructions to the men added that the switches should also be locked. Halges was accompanied by a companion inspector, Fetter, under whose orders he seems to have worked. He went to the west end of the string on track 5, set his blue light, locked the switch, and was walking east on the north side of the track; Fetter was on the south side, also walking east, a little in his rear, to set his light at the east end and lock the switch. When Halges was about ten cars from the east end

of the string on track 5, and therefore presumably at a place where there were no cars on his left hand on track 4, Fetter saw a string of cars coming from the east, apparently for track 4, where they should in fact have been shunted. To warn Halges, whom the cars would pass close beside, he twice called him by name, and then saw his light between the sills of two of the cars on track 5. Through a mistake the moving cars had been shunted, not upon track 4, but track 5, the east end of which was of course not yet protected by Fetter's blue light. They collided heavily with the string on track 5, driving the cars back about twenty feet; Halges was caught where he stood between the sills; one foot fell across the north rail, and was cut off. Though the testimony is perhaps somewhat ambiguous, it seems clear that his body was between the tracks and not between the rails of track 5; at any rate, the judge might so have found.

The defendant does not dispute its negligence, but argues that as Halges had got between the cars at a time when the east end of the string was not protected by a blue light, he was "primarily" at fault under the doctrine announced in Frese v. C. B. & Q. Ry., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131, and later cases which have followed it. Also that he assumed any risk of injury by placing himself between the sills. The plaintiff proved her own case when it appeared that the moving cars were shunted upon the wrong track; the defendant was then called upon to prove that Halges violated the rule, or assumed the risk. Just why he stepped between the sills can of course never be demonstrated, but the most probable reason is that, hearing Fetter's warning, and perhaps himself seeing the on-coming cars, he supposed, like Fetter, that they would come upon track 4, as they should have. Rightly believing that the space would be too narrow for safety as they passed him, he took refuge between the sills of the cars on track 5, and thus was trapped and thrown down. To argue that in these circumstances he violated the rule requires some hardihood. It was made to prevent workmen from voluntarily exposing themselves to danger without the designed protection; it did not prescribe their conduct in emergencies, when they must reach the most available place of safety. Halges did what any man similarly situated would do, what every dictate of prudence bade him do; he no more violated the rule than if he had run to the same cover to escape a car approaching on track 4 with a piece of wood at its side which swept the space between the tracks.

Why he assumed the risk of this particular danger we are not advised by the defendant, unless it be thought that a railway employee assumes the risk of every injury that may happen to him in a railway yard. It may be that yardmen crossing tracks must take their chances of the constant shunting which must go on, but we are not aware of any doctrine which leaves them without remedy when, while walking between tracks, they assume that two strings of cars will not be brought into violent and unintended collision.

Judgment affirmed.