## SOUTHERN PAC. CO. v. CLAYTON.
### No. 3175.

Court of Civil Appeals of Texas. El Paso.
March 28, 1935.

Rehearing Denied April 18, 1935.

Del W. Harrington, of El Paso, for appellant.

Lea & Edwards, of El Paso, for appellee.

WALTHALL, Justice.

Appellee, William E. Clayton, as administrator of the estate of Lee Allen Miller, deceased, brought this suit as such administrator, against the appellant, Southern Pacific Company, a railroad corporation, operating a line of railroad and railroad yards at Tucumcari, N. M., as an interstate carrier of freight and passengers by rail for hire, to recover damages for the death of Lee Allen Miller, deceased, which occurred on the evening of February 20, 1934, in the railroad yards at Tucumcari, N. M. At the time of his death, and for a long time prior thereto, said Lee Allen Miller was and had been an employee of de-

fendant Southern Pacific Company in its railroad yards at Tucumcari in the capacity of car inspector and repairer, charged with the duty of inspecting and repairing the equipment of cars and rolling stock of the defendant company in its Tucumcari yards, and to examine and inspect inbound and outbound trains to determine whether or not such trains were in proper condition for use, and whether the equipment was in accordance with the standard provided by the Federal Safety Appliance Act (45 USCA § 1 et seq.) and rules of the Interstate Commerce Commission and requirements of due care.

The record and the map filed here show that the main line of railroad used by defendant extends through the town of Tucumcari in a general northeast and southwest direction with the majority of the switches and spur tracks situated to the north of the main line and in general approximately parallel therewith; that parallel switches and spur tracks are connected therewith by what are known as leads off from the main line in a general northeasterly direction.

Towards the northerly edge of defendant's railroad yards is what is known and referred to as the "pump house spur" also the "water track spur"; just south of which is what is known and referred to as the "scales track," which track extends over and across certain scales used by defendant for weighing railway cars and their contents, and just south of said scales track is what is known and referred to as "track No. 9."

The pump house spur, water track spur, and the scales track extend in a general easterly direction from the lead off of No. 9, and the switch tracks extending from said lead each are controlled by what is known and referred to as a "blind" switch, having no lantern although the lead itself from No. 9 is controlled by a lantern switch.

The record shows that on the evening of February 20, 1934, there arrived in the Tucumcari railroad yards a train of some sixteen or more cars loaded with matter shipped by defendant in interstate commerce from which train about thirteen cars were, by defendant, placed on the pump house spur for inspection by said Lee Allen Miller, and were not intended to be used or moved by defendant any more that night, nor the following day, nor for any definite period of time; said thirteen cars so placed in the pump house spur completely filled said pump house spur so that the west end of such string of cars was just far enough easterly across the first

blind switch from lead No. 9 to clear the scale track, that is, no more cars could be placed on the pump house spur and the lead thereto without blocking the entrance to the scale track.

The record shows, and plaintiff alleges, that while Lee Allen Miller was engaged in, under, between, or about said thirteen cars, in inspecting them, he was instantly killed, as hereafter more fully stated.

We now here state, in substance, what plaintiff alleges: Defendant was switching freight cars to be put into an eastbound freight train, or had been taken out of an inbound freight train which had just arrived; that employees of defendant, or employees of another company, acting in the service of defendant, had about eight cars attached to an engine, with defendant's orders to place some number of cars on the scales for the purpose of weighing them; that the yardmaster or terminal trainmaster of defendant, namely, M. M. Luye, was directing the movements of the switching and was assisted therein by other employees of defendant, and by regular employees of another company temporarily acting as employees of defendant under orders of said Luye; that Yardmaster Luye had advised the crew in charge of the engine and cut of eight cars that the switches were lined for the scales, by which advice the crew operating said engine and cars reasonably understood that the blind switch controlling the pump house spur and the water track spur were closed, and the blind switch controlling the scale track was open toward such scale track, whereas, in fact, said switch controlling the scale track spur was closed to the scale track but open to the pump house spur, but there being no lantern on this switch and it being nighttime the condition was not apparent to the crew handling the cars to be weighed; that under such conditions the yardmaster and other employees of defendant signaled the crew operating said cut of eight cars with the intention of placing same on the scale track to proceed forward; that the engineer in charge, pursuant to the signals, put said engine forward with force, but instead of taking the switch to the scale track said eight cars were pushed in front with great force and passed through the open switch onto the pump house spur at a high rate of speed and crashed into the train of thirteen cars which were then being inspected by the said Lee Allen Miller, the impact being of sufficient violence to knock said thirteen cars for a distance of some fifteen or more feet, thereby killing Lee Allen Miller, who had no warning.

Plaintiff assigned the following as negligent acts on the part of defendant as proximately causing or contributing to cause the death of Lee Allen Miller:

1. An employee of the defendant, supervising the switching of said cut of eight cars for the purpose of having the same weighed, told the crew operating said cut of eight cars that the switch was lined for the scales, which was untrue and which the agent, servant, and employee of the defendant, by the exercise of ordinary care in the discharge of his duties, could have known was untrue, and it was his duty to know that the blind switch to the pump house spur was, in fact, closed to that spur and open to the scale track before telling the crew operating said cut of eight cars that the switches were lined for scales track.

2. The employees of the defendant negligently signaled to the crew operating said cut of eight cars to proceed forward toward the scale track without first determining whether or not the blind switch controlling the pump house spur was, in fact, closed to that spur and open to the scales track.

3. The employees of the defendant and each of them negligently ran a cut of cars at a dangerous rate of speed upon and against the train of cars at which said Lee Allen Miller was on duty.

4. The employees of the defendant ran a cut of cars into the train of thirteen cars being inspected by the said Lee Allen Miller, without their first determining whether said movement could be made without injury to any other employee of the defendant who might reasonably be expected to be in or about said train of cars.

5. That defendant, its agents, servants, and employees, were guilty of other acts and omissions which were negligent and which are not now known to the plaintiff, but which are well known to defendant, and by pleading specially to the various grounds of negligence above set out, plaintiff does not intend to limit his right to recover to said specific grounds, but intends to rely on any grounds of negligence which may be shown on the trial of the case.

The petition then states the age of Lee Allen Miller as fifty-one years, his physical condition as strong and healthy, his earning capacity, states the names and ages of each of his children, and the capacity in which he sues and the damages for which he sues.

Defendant answered by general demurrer, special exceptions, general denial, special denial of the negligent acts complained of; spe-

cially answered that if Lee Allen Miller was injured and killed as alleged, said injury and death of Miller was due solely to some act of his in voluntarily placing himself in a situation of peril, the specific nature of which defendant does not know, but that in so placing himself in such situation of peril Lee Allen Miller thereby assumed all the risks and dangers incident thereto; answers that if Lee Allen Miller was engaged in inspecting and repairing any cars at the time of his injury and death, then and in that event, under his employment he was duly bound to place a blue light at the end of the car or a string of cars about which he was inspecting or repairing before undertaking to make such inspection or repairs, and which defendant answers that Lee Allen Miller wholly failed to display any blue light or signal; that Lee Allen Miller well knew his duty in that respect and knew the dangers and hazards incident to such service without displaying such light and signal, and he knew that any cars in the yards were subject at any time to be coupled into and moved unless a blue signal were displayed.

By supplemental petition plaintiff reasserted that the injuries and death of Lee Allen Miller were proximately caused by the alleged negligence of defendant and of which Lee Allen Miller was unaware; denied that he assumed the risk of injury by reason of the alleged negligence of defendant of which he had no knowledge.

By trial amendment plaintiff alleged: That after telling the crew handling the cars to be weighed, to put such cars on the scales track and that he (Luye) would have the switches lined for the scales track, that Yardmaster Luye failed to have the switches so lined, prior to the movement of the cars in question.

The case was submitted to a jury on special issues. After defining certain terms used in the charge, and submitting all issues on a preponderance of the evidence, on the issues submitted the jury found substantially as follows:

1. While Lee Allen Miller was engaged in the performance of his duty as car inspector, and while under, around, or about a car of a work train standing on the pump house track of defendant in its yards at Tucumcari, N. M., the westerly end of said work train was struck by a cut of cars then being switched in defendant's yard and thereby a car of the work train was propelled over or against the said Miller and he was thereby killed.

2. Shortly before the death of Miller the yardmaster of defendant told the crew in charge of the engine, or member thereof, that the switch was lined (open) for the scales track.

3. It was negligence on the part of defendant's yardmaster to so inform said crew, or a member thereof.

4. Such negligence was a proximate cause of the death of said Miller.

5. It was negligence on the part of those engaged in switching the cars to run same on the pump house track and strike or bump into the work train thereon.

6. Such negligence was a proximate cause of the death of Miller.

7. It was negligence on the part of defendant's yardmaster to have failed to have the switch lined for the scales track prior to the movement of the cars intended to be weighed.

8. Such negligence was a proximate cause of the death of Miller.

9. The failure to have the westerly end of the work train protected by a blue light immediately before his injury was not the sole proximate cause of the death of Miller.

10. Just prior to the collision between the cars in question, Miller did not voluntarily place himself, relative to a car of the work train, in a position that, in case same in the course of switching operations was struck or bumped into, he was in danger of being injured.

11 and 12. Conditional and not answered.

13. By the death of Lee Allen Miller, Mrs. Willie E. Miller suffered $20,000 damage; J. A. Miller, Luther Miller, Raymond Allen Miller, or Syble Allen, each suffered $1,000 damage.

The answer to No. 13, as above, is a brief answer to and embraces questions 14 and 15, in which the court limits the consideration of the jury to the pecuniary benefits the parties might reasonably expect to receive had Miller not been killed; the circumstances and length of time Miller would owe each the duty of support; that the jury would not allow anything for loss of companionship or as a solace for grief; and asks the jury to apportion the damages found, if any.

The court overruled defendant's motion for judgment in its favor, and entered judgment for the plaintiff and as apportioned by the verdict, to which defendant excepted. The court overruled defendant's amended motion for a new trial to which defendant excepted and gave notice of appeal, which is duly perfected.

## Opinion.

Appellant filed assignments of error and based thereon presents its propositions.

■ Appellant's first four propositions submit that the Federal Employers' Liability Act (45 USCA §§ 51-59) furnishes the sole and exclusive measure of the rights and liabilities of the parties in this case, to which we concur.

■ Appellant has rested its special defense on its plea of assumed risk on the part of the deceased, Lee Allen Miller. The facts submitted to and found by the jury in the first issue are amply supported by the evidence. Lee Allen Miller at the time of his death was a car inspector and car repairer of appellant in its Tucumcari railroad yards, and at that time and place was engaged in the performance of his duty as such inspector of the cars standing on the pump house track and was killed by a cut of cars then being switched in appellant's yards which bumped into the work train then being inspected. The evidence shows without controversy that Lee Allen Miller had inspected the north side of the work train, and at the time of his death was passing along the south side, and, for some unexplained reason, had stopped by the side of the train, and when the collision came he was found under one of the cars killed. We think it a fair presumption that Miller had stopped to inspect some part of the car or cars nearer the south side than the north side, and that when he had reached that part of the train he was then in the act of making the inspection he thought it advisable to make. We think it would be a far-fetched presumption to conclude that Miller, an experienced workman, had voluntarily and unnecessarily put himself under the car and for some purpose not connected with his duties as car inspector of those cars. We think it immaterial that nothing was found at that particular place that needed repair.

■ In answer to the question to a witness, "What is the first thing to be done when inspecting or working on cars or trains?" witness answered: "To see that you are protected by the blue light."

In that connection appellant offered in evidence its rule 26, and Miller's acknowledgment of same, as follows:

"El Paso & Southwestern System Rule 26 of the Rules and Regulations of the railroad companies composing what is known as the El Paso & Southwestern System, reads as follows:

" 'A blue flag by day and a blue light by night, displayed at one or both ends of an engine, car or train, indicates that workmen are under or about it. When thus protected it must not be coupled or moved. Workmen will display the blue signals and the same workmen are alone authorized to move them. Other cars must not be placed on the same track so as to intercept the view of the blue signals, without notifying the workmen.' "

In connection with the above rule 26, appellant offered a statement in writing signed by Lee Allen Miller to the effect that he had read and understood the rule; that it was his personal duty when working under or about an engine, car, or train, to cause a blue flag by day or a blue light by night to be displayed for his protection; acknowledged that he understood the hazard and danger of failing to observe the rule and agreed to display such signal and agreed to "assume all risk of accident which may result from my negligence in failing to do so." In addition to the above, it was shown that there was a set of rules, in card form, posted on the wall in the inspector's office, at all times. Bohlson, a car inspector with Miller, testified that a blue light was on the train of cars on the night of the accident; that he picked it up just before the accident in the presence of Miller, but makes no explanation why he removed the blue light except that he said they were through inspecting the train. The evidence shows that both Bohlson and Miller were about the train when Miller was killed.

Witness Spivey, brakeman, who gave the signal to go forward, testified that he did not see a blue light on this cut of cars, and that had there been a blue light displayed he would not have proceeded without an investigation.

Witness George White, conductor on the Rock Island Railroad, testified, and so far as we have seen from the record his evidence is not contradicted. He, with his freight train and crew, got into the defendant's Tucumcari railroad yards early in the morning of February 20, 1934, the day that Miller was killed. Just prior to the time Miller was killed witness and his crew, including witness Brakeman Spivey, were switching stock cars out and brought them to the scales track to light weight them for the Southern Pacific record to make the correct charge on stock arriving in Tucumcari in these cars. The crew were switching the cars under the direction of defendant's yardmaster, Mr. Luye. Before having these cars weighed, Mr. Luye called witness and his crew and directed them

what work he wanted the crew to do and the manner in which he wanted the work done. We give a few of the questions and answers, not in regular order and not all questions and answers, but enough to show substantially what was done.

"Question: What, if anything, did Mr. Luye say to you with reference to how the switches were lined with reference to the scale track? Answer: He told us to bring the cars through number nine track to the scale and he would meet us and have the weighmaster and everything lined up to weigh the cars.

"Question: Now, in railroad parlance, what is the meaning of 'have everything lined'? Answer: Have everything ready for weighing.

.. "Question: When you arrived the cars south on lead number nine it was necessary in order to get in on the scale track to go far enough south to come in on the lantern switch on lead number nine, was it not? Answer: Yes, sir.

"Question: After receiving this instruction from Mr. Luye, just exactly what did you do? Answer: We took the engine and went to the stock track where these cars that we were to weigh had been placed and brought them up on number nine track, stopping at a point just opposite the scale house and made a cut, taking these three, and I do not remember how many others we had behind. I was there met by Mr. Luye and he told me that he had lined everything for a shove on the scale.

"Question: The engine crew then did what? Answer: The engine crew took the signal to back up over number nine switch over the scale.

"Question: Was the signal then given the engine crew to push the cars forward to the scale track? Answer: Yes, sir.

"Question: Who gave the signal? Answer: Brakeman Spivey.

"Question: What happened after the come-on signal was given the engineer? Answer: The switch leading from the scale track toward the track called the pump spur had been lined for the scale track, and the cars we were shoving struck some others standing on the spur track.

"Question: Did that result in an injury to anyone? Answer: Yes, sir, Mr. Miller."

Brakeman Spivey testified to substantially the same facts as did witness White. Without stating the questions and answers, he says: Mr. Luye told the crew to take out the engine and go to the stock track and get what stock cars were there, and come back through No. 9, the lead they call it, and that he (Luye) would go across the scale track and "have all switches lined for us." Witness Spivey gave the signal that shoved his train into the cut of cars on the pump house track that killed Miller.

Appellant submits that under the Federal Employers' Liability Act, the common-law doctrine of assumed risk is available, where the facts and circumstances of the case show that the deceased employee assumed the risk of dangers incident to his undertaking, as under rule 26, and Miller's acceptance of the rule, as a matter of law, it then becomes the duty of the trial court to direct a verdict in favor of defendant, appellant here.

There can be no possible doubt as to what killed Miller. The standing string of cars on the pump house track was violently hit and pushed by the cars intended for the scale track, over his body, about fifteen feet. These cars, intended to go to the scale track, were caused to go to the pump house track through an oversight of the yardmaster of appellant in his failure to set the switch for the scale track after telling the train crew that he would do so, and that he had done so, and in directing the train for the scale track to go forward.

Had Miller and his co-worker, or either, in inspecting the cars on the pump house track, omitted to place the blue light on the end of that train of cars, or had taken up the light before the inspection was ended, or before they had gone away from the train, and Miller had been killed by usual train operations and under such circumstance that appellant would owe Miller no duty of notice or to warn him of danger than the blue light would give him, we think under such circumstances the plea of assumed risk would be available. But here, Miller's violation of the blue flag rule was not the cause of his death. The cause of his death was the failure to properly line the switches for the scale track as testified to by White and Spivey. Evidently, under the facts disclosed by the record, Miller would have been killed if the blue light had been displayed on the end of the train that struck him; the train crew did not intend to go onto that track, the pump house track, but did intend to go on the scales track. They did not go onto the pump house track because they were directed to do so, nor because there was no blue light on that track.

■ The jury found that it was negligence and a proximate cause of the death of Miller on the part of those engaged in switching the cars to run the cars onto the pump house

track. That finding is amply supported by the evidence.

We have carefully reviewed the cases to which we have been referred by appellant.

Appellant did not go to the jury on the issue of assumed risk under the facts, but rested the case on the question of assumed risk as a matter of law.

We think, as said by the Circuit Court of Appeals in the case of Halges v. Central R. Co. of New Jersey, 58 F.(2d) 169, that appellee proved his case when he proved that the moving cars that killed Miller "were shunted upon the wrong track."

We have considered the other propositions presented by appellant and have concluded they present no reversible error and they are overruled.

The case is affirmed.