## TEXAS & P. RY. CO. v. MIX.

### No. 4442.

Court of Civil Appeals of Texas. El Paso.

Jan. 10, 1946.

Roy D. Jackson and Burges, Scott, Rasberry & Hulse, all of El Paso (M. E. Clinton, of Dallas, on the brief), for appellant.

Clifton Hildebrand, of Oakland, Cal., and Abner S. Lipscomb and William C. Peticolas, both of El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal by the Texas & Pacific Railway Company from the judgment of the district court of El Paso County, Texas, Forty-First Judicial District. Appellee, Charles H. Mix, sued appellant to recover damages for personal injuries alleged to have been caused by its negligence. Appellant was engaged in interstate commerce, and appellee was its employee, and engaged in acts in furtherance of such business at the time of his injury. It is conceded that the action is governed by the Federal Statutes relating to employer and employee engaged in interstate commerce.

The trial was to the court, with a jury, submission on special issues. On the verdict returned the court entered judgment in favor of appellee in the sum of $45,000. There are no questions raised by the appeal as to the sufficiency of the pleadings, and it is deemed unnecessary to summarize same. However, in view of some of the points raised by the appeal, a rather detailed consideration of the evidence is necessary.

Appellee suffered personal injuries for which recovery was sought, in the railroad yard of appellant at Toyah, Tex., on the night of October 24, 1943, while inspecting the brakes and couplings of certain cars and cabooses then standing on track No. 4 in said yard.

This yard lies to the north of the main line, which runs generally east and west. It consists of four switch tracks, numbered 1, 2, 3 and 4 respectively from the main track to the north, No. 4 being the most northerly of the four switch tracks. These tracks are used in making up trains going either west or east from Toyah and in connection with that activity, storing trains, cars and cabooses. Each of these tracks will hold about ninety cars. The lead track was at the west end of track No. 4.

Yardmaster McCreary was in charge of the yard on the night of this accident. At about 9:45 p. m. appellee was called to act as rear brakeman on a freight train to proceed west out of Toyah to El Paso. Subsequent to this call he proceeded to the yard, where it was his duty to acquaint himself with the movement in the yards necessary to the making up of his train, and to prepare the caboose to be attached thereto. Incidental to such preparation it was necessary to place marker lights on the rear of the caboose, the marker lights shining to the rear red, and to the front green. Appellee placed such marker lights on the caboose, which as has been stated was on track No. 4. To the west of this caboose on said track were some twelve to fifteen other cabooses, coupled together, to the east several freight cars. After placing the markers on the caboose, appellee was inspecting the couplings and brakes on the cars and cabooses, to the end that same might be moved out from track 4 to make the caboose he was going to use available. In making such inspection he went between the ends of the cabooses and threw the light from an oil lantern which he was carrying on the couplings. While he was thus engaged, a freight train backed onto track No. 4 and struck the rear of the most westerly of the standing cars and cabooses, with its caboose. This moved the cars and cabooses on track No. 4 easterly, knocked appellee down, and he was seriously and permanently injured. Injured to such an extent that it was necessary to amputate his right leg.

The train backing in on track No. 4 arrived in Toyah about 9:45 p. m. Orders were given by the yardmaster to store this train on track No. 4. In carrying same out it was necessary to back the train onto that track. There was evidence that as the train backed in on No. 4 the movement was guarded and protected by brakeman Eastham, who was on the platform of the caboose with an electric lantern; that track No. 4 is somewhat curved, and Brakeman Hill dropped off the train and took a position from which he could transmit signals given by Eastham to the engineer. Eastham testified that as the train proceeded east he saw the marker lights on the caboose; that when he did he dropped to the ground and gave Brakeman Hill a stop signal, that up to the time he jumped off and gave the signal he had not seen the rear of the standing caboose; that as

he reached the ground at this time he estimated that the rear end of the standing caboose was about a car's length from him; that the train did not come to a stop before it hit the standing caboose. That the yard was not lighted by floodlights. He said the signal he gave was a "washout" signal. A washout signal was for an emergency stop. It is fairly evident from his testimony that striking the standing caboose was unintentional, and was sought to be avoided. He further testified that the train was backing at a speed of about four or five miles per hour.

The evidence was sufficient to raise the issue that the Yardmaster did not inform those in charge of the backing movement onto track No. 4 of the presence of the cars and cabooses standing on same. There was also evidence that in getting in between the cars to inspect the brakes and couplings appellee was acting in the usual and customary manner, also evidence that marker lights on a caboose standing on a switch track and composing no part of a train was not a signal that anyone was in such proximity thereto as to be in danger by a movement thereof. At this time appellant had in force Rule 103(a) which was as follows: "In shoving or pushing cars into a track, it must be known there is sufficient room in the track to hold the cars. When necessary the movement must be protected. Cars must be left clear of other tracks."

Appellant seems to concede that it was the duty of those moving cars or trains in the yard to have such trains under such control that they could avoid unintentionally striking a car or other obstruction on the track, in any event there was evidence to this effect.

The jury, in substance, found:

First: That the train was backing into track No. 4 at a negligent rate of speed (a) that such negligence was the proximate cause of injury;

Second: That such rate of speed did not prevent the stopping of the train in time to avoid striking the cars on said track (a) that same was negligent (b) that such negligence was the proximate cause of the injury;

Third: That the Yardmaster failed to notify those in charge of backing the trains into track No. 4 of the presence of the other cars on said track (a) that this was negligent and the proximate cause of the injury;

Fourth: That those in charge of the train prior to the accident failed to ascertain whether there was sufficient room to hold the train being backed in on track No. 4 (a) this was negligence (b) and proximate cause of the injury;

Fifth: That the defendant failed to provide such lighting in the yards as a person of ordinary prudence would have provided (b) that this was the proximate cause of the injury.

All the issues of contributory negligence submitted were found in favor of appellee, also all other defensive issues were so found.

Appellant urges in his brief some 54 points of error. In the first three points it is asserted in substance that under the evidence appellee was not entitled to recover, and that the court erred in failing to so instruct the jury, and in overruling defendant's motion for judgment non obstante veredicto. In the event the first three points of error be not sustained, it is urged that the court erred in refusing to grant a new trial on account of the misconduct of the jury; likewise argument of counsel is asserted as error. Several findings of the jury are asserted to be without supporting evidence or against the clear preponderance thereof. Other points assail the action of the court in the admission of evidence. It is likewise asserted that the court's definition of negligence was incorrect, and that the jury should have deducted something on account of appellee's contributory negligence.

Appellant's position is, as we understand it, that it was entitled to an instructed verdict because the evidence is insufficient to raise the issue of actionable negligence. In support of this theory it is specifically urged that none of the employees of appellant in charge of the train backing into track No. 4 knew of the presence of appellee in or about the string of cars or cabooses, the rear end of which the train was propelled against. It is not thought that appellant intends to assert that if such employees should in the exercise of ordinary care have anticipated appellee or some other person was or might be in dangerous proximity to the movement, that they did not have the duty of ordinary care.

Brakeman Eastham, riding on the steps of the caboose, sprang to the ground on

discovering the markers on the caboose in the *string* of cars and cabooses, and gave the signal for an emergency stop. It seems clear from his action that it 'was not at the moment contemplated that a coupling be made to the standing cars and same be shoved farther east to make room for the train in the process of being backed into the track. On seeing the marker lights he reacted to the emergency by springing to the ground and signalling an emergency stop. It is true the engineer stated that he did not interpret the signal as transmitted to him by Hill as an emergency stop, but simply for an ordinary stop. The presence of Hill in the position to relay Eastham's signals indicates that it was contemplated that it might be necessary to suddenly stop or retard the movement. It seems to be conceded that the proper and customary way of conducting such movement was at such speed that the train could avoid running into any car or other obstruction stationary on the track. It may be this rule or custom was in part to protect those conducting the movement and in part to protect equipment. It is likewise thought that in part at least it was for the safety of those who might be in or about the standing cars. There was testimony on the part of appellant that a caboose standing on the siding in the clear having the markers showing did not indicate that anyone was in dangerous proximity thereto whose safety would be jeopardized by the same, that it might be that someone had placed it there and left it without removing the markers, or someone had placed them there in preparation to move same out for incorporation in a train. Yardmaster McCreary knew, or in the exercise of ordinary care should have known, of the presence of the caboose in question on the siding. Likewise knew, or should have known, that this caboose, or one of them, was shortly to be moved from the siding and incorporated in a train, that appellee or some other employee would be around same in the performance of the duties incidental to the contemplated movement. Appellee at the time of his injury was in his place of duty, performing his usual and customary duties, and there was evidence in the usual and customary manner.

▇ The law applicable to this case is the Federal law. The decisions of the United States Supreme Court govern. Under these decisions we think there were issues to be submitted to the jury and the trial court was not in error in so holding. Louisville & N. R. Co. v. Payne's Adm'r., 177 Ky. 462, 197 S.W. 928, L.R.A.1918C, 376; Texas & Pac. R. Co. v. Baldwin, Tex. Civ.App. 25 S.W.2d 969; Id., Tex.Com. App., 44 S.W.2d 909; Southern Pacific v. Clayton, Tex.Civ.App., 81 S.W.2d 788, Writ Refused; New York Central R. v. Marcone, 281 U.S. 345, 50 S.Ct. 294, 74 L.Ed. 892; Tennant, Adm'x, v. Peoria & Pekin R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

▇ Of course it is fundamental in the law of negligence that action or nonaction can not be held to have the quality of negligence unless there is an ability to appreciate a harmful tendency thereof as to another. It is likewise true that to have the quality of negligence, human action or nonaction does not have to be in the light of absolute knowledge that another will be injured thereby. The court's definition of negligence was the stereotyped definition. Appellant's point or points with reference thereto are without merit.

In its motion for a new trial appellant asserted that the jury were guilty of misconduct in their deliberation in discussing the following matters which were outside the record:

First: That defendant carried insurance which would pay the damages awarded in this case.

Second: That a percentage of the damages awarded to plaintiff would go to plaintiff's attorney as a contingent attorney's fee.

Third: That in other personal injury cases large sums had been awarded as damages.

Fourth: One of the jurors who had an artificial leg exhibited said leg to the jury.

Fifth: That the crew of the train which backed into track No. 4 at the time of this accident were in a hurry to get through so they could go and get some rest.

In the order overruling the motion, the court found as follows: "The court finds that there was a discussion of attorneys fees to be paid to plaintiff's attorneys out of the damages awarded to plaintiff, and what percentage of the damages said attorneys fees would be, and said discussion took place prior to the amount of damages being agreed upon by the jury; the court finds that the evidence does not show whether the jury added anything for at-

torney's fees onto the amount of damages awarded; the court also finds that the carrying of insurance by the defendant was mentioned in the jury room during the deliberations, that the award of large sums as damages in some other cases was mentioned in the jury room during said deliberation, and that a juror who had an artificial leg showed said artificial leg to the jury during their deliberations."

It is further stated, in substance, in the order that the judge, after hearing the motion and testimony, stated that if plaintiff could appeal he would not hesitate to grant the motion, but as the plaintiff could not correct an error of the trial court in granting said motion, and because he. was not certain that the Appellate Courts might not permit the judgment to stand, he would overrule the motion. None of these findings or recitals are attacked by appellee; each and all of the findings are sustained by ample evidence.

■ The first three grounds set forth present grave and serious instances of misconduct. It has long been held that the occurrence of misconduct is a question of fact to be determined by the trial court, the finding on disputed issues as to its occurrence is binding and final, or in any event in most cases. Further, the effect of established misconduct is a question of law. This question is primarily for the trial court, but its finding thereon is not binding on the Appellate Court. Houston & Texas Central R. Co. v. Gray, 105 Tex. 42, 143 S.W. 606; Barrington et al. v. Duncan et al., 140 Tex. 510, 169 S.W.2d 462.

■ A great number of authorities might be cited holding misconduct of the character here found in the trial court on ample evidence entitles the complaining party to a new trial. The cases cited below are typical of many others: Texas & P. R. Co. v. Van Zandt, Tex.Com.App., 44 S.W.2d 950; Texas & P. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307; Sproles Motor Freight Lines, Inc., et al. v. Long, 140 Tex. 494, 168 S.W.2d 642; City of Houston v. Quinones, 142 Tex. 282, 283, 177 S.W.2d 259. The last case cited discusses and construes the effect of Rule 327, Texas Rules of Civil Procedure, where a new trial is sought on the ground of misconduct of the jury; under this authority and under the very terms of such rule the burden is placed upon the complaining party to show probable injury.

Before the passage of the rule the burden was upon the appellee to show no injury resulted. Casstevens v. Texas & P. R. Co., 119 Tex. 456, 32 S.W.2d 637, 73 A.L.R. 89. By the very terms of the rule the burden is only to show the probable injury; the scope of inquiry and what constitutes probable injury are clearly and authoritatively set forth in the case of the City of Houston v. Quinones, supra. It is fruitless to labor the matter. This was a closely contested case—a verdict in favor of either party would have been sustained by the evidence. Damages were unliquidated, and assessed in a large amount, although the injuries were severe and the measure of damages large. No matters discussed by the jury outside of the record would have been admissible in the evidence. In our opinion the first three grounds of misconduct urged and established require a reversal of the judgment. When their probable cumulative effect is considered there can be no doubt that the judgment must be reversed. Smerke v. Office Equipment Supply Co. et al., 138 Tex. 236, 158 S.W.2d 302. Due regard has been given that after a considerable discussion of the fact of attorneys fees some juror suggested that it was not a proper discussion; in view of the fact that the jury had discussed the matter at some length it is not thought this caution would remedy the matter. Even were this true, the mention and discussion of the question of insurance alone would demand the reversal of the case.

■ In our opinion, the statement by the trial judge that a new trial would be granted but for the fact that appellee could not appeal therefrom, demonstrates that appellant was entitled to a new trial. His action should have been in no way influenced by such consideration. His statement as reflected in the order indicates the probable erroneous view that the burden was upon appellant to establish injury. The burden is to establish probable injury. Rule 327 so provides and has been so construed by the Supreme Court. City of Houston v. Quinones, supra.

■ The question raised relating to argument of counsel will not be discussed, as same will not probably arise on another trial. Relative thereto it might be remarked that where the objection to the argument is that it misstates the evidence, it is the duty of the trial court to determine this, and not leave it to the jury, unless

548

counsel assent to such disposition of the matter.

■ The submission of special issue No. 1 is attacked as not being raised by the evidence, and further as to the form thereof. The jury finding is assailed as being against the evidence. No. 1, in substance, presents the issue as to whether or not the employees of defendant backed the train at a negligent rate of speed. The employees of appellant conducting the movement estimated the rate of speed from four to five miles per hour. It is clear that in the matter of stopping or slowing down the movement the engineer was compelled to rely on relayed signals. Eastham on the front of the train backing upon the track, upon discovery of the standing cabooses and cars, seems to have acted with great promptitude. There is no evidence that Hill, who relayed Eastham's signal, failed to act promptly. The train was shoved against the standing equipment at a time and speed undesigned by those conducting the movement. In controlling the movement of a train speed is as a rule the controlling factor. The evidence in our opinion raises the issue that under all facts and circumstances that this train was not under proper control as to speed. The issue is not deemed duplicitous. There was evidence as to the rate of speed at which the backing train was moving; perhaps the only evidence is that of the employees of appellant that the speed was from four to five miles per hour. It may be the evidence of the force of the impact is sufficient to indicate or warrant a greater speed. The single question presented was whether or not such speed was wanting in ordinary care under all the facts and circumstances of the evidence. The point is overruled.

Special issue No. 3, which the jury answered "yes", was as follows: "Do you find from a preponderance of the evidence that on or about October 24, 1943, just prior to the accident, defendant's agents, servants and employees backed defendant's train into track No. 4 at a rate of speed which would not permit the stopping of defendant's said train in time to avoid striking of the cars of defendant then on Track No. 4? Answer yes or no."

The supporting issues of negligence and proximate cause were found in favor of appellee. The issue is assailed as not being raised by pleading or evidence, "and for the reason that the issue does not relate to any other fact or factor or any time or distance." Beyond question Eastham endeavored to have the train stop before it struck the cars standing on No. 4. The real issue was, we think, as to whether the train was operated at such a rate of speed that it could not be stopped after the cars were visible to Eastham, the employee on the front of the caboose of the backing train. The issue is thought too general in form and in part subject to the objection of the appellant—in fact, in a way 3, 4 and 5 as formed submit the matters submitted by 1 and 2. If submitted on another trial a reformation of issue No. 3 is suggested. Gillett Motor Transport Co. v. Whitfield, Tex.Civ.App., 186 S.W.2d 90.

■ Special issue No. 21 submitted the damages sustained by appellee as a result of his injuries. No. 22 was as follows: "If you find from a preponderance of the evidence that the plaintiff's injury was caused by the negligence of both plaintiff and defendant's employees, concurring together, then say by how much the amount, if any, named by you in answer to the preceding question, should be diminished by reason of plaintiff's negligence, if any, taking into consideration the extent to which the plaintiff's negligence, if any, contributed, if it did, to the total amount of the damages, if any." It was not answered, and its answer became immaterial as appellee was found not guilty of contributory negligence. Appellant's contention that appellee was guilty of contributory negligence as a matter of law is without merit. In view of another trial we shall consider briefly appellant's assignment relating to the issue. Appellant's objection to the issue in substance was that it advised the jury of the effect of its answers to the issues in the case, submitted the issue of concurrence of the negligence of appellant and appellee, which is a legal question; that the question should inquire what proportion damages should be diminished, and as formed the issue amounted to a general charge.

Title 45 U.S.C.A. § 53, provides: "The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." In our opinion the objection is not tenable. Chicago, R. I. & G. R. Co. v. Smith, Tex.Com.App., 222 S.W. 1099.

The very issue was as to the proportion appellee's negligence bore to that of appellant. It is difficult to form the issue in such a manner that some intimation or clue can not be deduced therefrom as to the legal effect of the answers as to negligence of the defendant and that of plaintiff. The form of the issue does not necessarily convey to the jury information as to the legal effect of the answers to such issue, or of the legal effect of other answers to other issues.

In our opinion special issues 1, 2 and 3, given at the request of appellee, were proper issues raised by the evidence. Issue No. 1 submitted whether Yardmaster McCreary failed to inform those conducting the movement of the train on track No. 4 of the presence of the cars on said track. No. 2 and 3 submitted the issues of negligence and proximate cause. The complaint of appellant seems largely as to the admission of evidence relative to the issues, rather than as to the submission of the issues.

Appellee requested, and the court gave, issues 4, 5 and 6. No. 4 submitted whether those in charge of the movement onto track No. 4 prior thereto failed to ascertain whether there was sufficient room thereon to hold the cars being pushed thereon. No. 5 and 6 respectively submitted the issues of negligence and proximate cause. In our opinion No. 4 in the form submitted is not raised by the evidence. In answer to special issue No. 23 the jury refused to find that there was not sufficient room on the track to hold the train.

The court gave at the request of appellee requested special issues Nos. 7 and 8. These issues submitted in substance whether or not the yard at Toyah was adequately lighted; whether the inadequate lighting was the proximate cause of the injury. Appellant in its statement fails to make any reference to the record showing any objection on its part to the submission of the two issues. An examination of the record, however, shows appellant excepted substantially on the grounds that they were not raised by either the pleading or the evidence, that no duty was shown relative thereto owing by the appellant to appellee. Further, as a matter of law the failure to have lights was not a proximate cause of the injury, and the issues were duplicitous. There was evidence that there were no flood lights in the yards at Toyah.

There were block signals, green and red lights on the switch stands. This yard, as we deduce from the evidence, was something over one-half mile in length, and of a width of five tracks, together with the intervening space between the tracks. No evidence as to the cost or feasibility of installation of such lights, no evidence as to the custom of railroads throughout the country with respect to the custom of lighting yards by means of flood-lights. In our opinion the issue submitted was not raised by the evidence. On another trial the issue may be further developed. The decision as to whether or not issues are duplicitous would be of no practical advantage on another trial.

There are complaints as to the reception of evidence. These assert error in the refusal of the court to sustain objections to certain questions on the ground that same were leading, and on account of same calling for a conclusion of the witness. These objections as to each witness involved are so similar that separate disposition is deemed unnecessary.

Appellee prior to the trial took the depositions of the following employees of appellant: McCreary, Dyer and Eastham. McCreary and Eastham were employees of the corporate appellant, involved in the transaction out of which this suit arose. Dyer was an employee of appellant, but was not involved therein. It is not shown when these depositions were filed; it is not directly shown whether same were oral or taken upon written interrogatories. However, from the form of the questions we shall assume that they were oral depositions, taken by stipulation or upon notice. Appellee stated when same were offered, or rather, portions thereof, that the offer was under Rules 182 and 188, Texas Rules of Civil Procedure. It does not appear what, if any, objections were urged to the questions on the taking of the depositions. The objections before us were objections made, we assume, when the evidence was offered at the trial.

Rule 182 has no express application here. It does authorize in certain cases the calling and examination of a corporate employee of the party in the same manner as though such employee were a party to the suit and under the conditions specified expressly authorizes leading questions. Rule 188, insofar as applicable here, authorizes the taking of a deposition of an employee of a corporate party by an ad-

verse party only insofar as it authorizes the taking of a deposition of any party to such suit, or any witness under the general rule as to the taking of depositions. There is no clearly expressed authorization given in the rule that in taking a written or oral deposition of an employee of a corporate party that leading questions may be propounded.

However, Rule 182 recognizes a right to propound leading questions to certain employees of a corporate defendant by its adversary. There seems to be no good reason that the same privilege should not be extended under the same conditions in the case of depositions. In such a case the witness is considered hostile. Leading questions to a hostile witness, whether on the stand or testifying by deposition, are permitted. Commercial Security Co. v. Collins, Tex.Civ.App., 208 S.W. 728.

This disposes of the complaints as to leading questions propounded to the witnesses Eastham and McCreary. Witness Dyer, while an employee of appellant, was in no way involved in the accident. In our opinion, as to his deposition there was no occasion to relax the rule as to leading questions. However, objections on the ground that the questions are leading were made at the trial. This objection goes to the manner and form of taking. 15 Tex.Jur. p. 74, par. 36. This being true, if the depositions were filed for one day prior to the time the case was called for trial, then appellant's objection should have been in writing, and notice thereof given to the appellee. Rule 212, Texas Rules of Civil Procedure. There is no showing the depositions were not on file for an entire day before the trial. The points of error as to questions being leading, when considered in connection with the statements relative thereto, fail to establish error.

In addition to the objection above disposed of it was urged that the questions called for conclusions and the answers were in part based on written rules which were the best evidence. The above objections were urged to parts of the testimony of appellee, McCreary, Eastham and Dyer. Appellee, Dyer and Eastham were brakemen working in and out of the yard at Toyah, and were so doing at the time of the accident and for some time prior thereto. McCreary was the Yardmaster. Each was presumptively acquainted with the customary manner of handling trains and cars within that yard. Each, we take it from their testimony, knew their own duties and the duties of other employees in the yard.

The objection to appellee's testimony as to the duties of the Yardmaster were urged by the motion to strike. It is thought that appellant's failure to object at the time the question was asked appellee waived this point. The witness stated in substance that it was the Yardmaster's duty to tell the crew of an incoming train upon what track to put same, and inform them at such time of the presence of any other cars on such track. Further, that it was the custom in the Toyah Yard in backing the train on to one of the switch tracks, to operate same at such a rate of speed as to be able to stop short of any obstacle, obstruction, derail, broken rail, or anything that might be in the way. Appellee did state that there were written rules covering the duties of a yardmaster, but did not state that all of his duties were set forth in the rules. There is no error in overruling the motion to strike this testimony, or in overruling the objection in regard to the customary rate of speed. As to the customary and proper rate of speed in backing a train onto a switch, appellant's Division Superintendent, James G. Brannon, employed for over 30 years, testified on cross examination in substance that according to the customary way of operating trains in yards, in backing onto a switch or storage track they should operate at such speed as they could bring the train to a stop in the range of their vision.

In a general sort of way it is thought that what has been said disposes of the objections as to the testimony of the witnesses Eastham, Dyer, McCreary, and appellee. The rule or custom as to operating at a reduced rate of speed seems so founded on caution and ordinary prudence that a failure to so operate in the absence of any rule or custom would raise the issue of negligence. The rate of speed of a train is the chief factor as to the control thereof. Customary operation may not conform to the written rules. Where this is the case any reversion to the rule without notice might be highly hazardous. These witnesses were all skilled in the rather technical and hazardous business of handling trains in the yards and the proper way of handling same. They each should have known the proper mode of

handling trains under such circumstances. The points are overruled.

All of the assignments relating to the admission of evidence have been considered, and those not discussed are deemed without merit, and are not likely to occur on another trial.

For the reasons stated, it is ordered that the judgment of the trial court be reversed and the cause remanded.