## HEFLIN v. FORT WORTH & D. C. RY. CO.
### No. 14894.

Court of Civil Appeals of Texas.
Fort Worth.
Dec. 5, 1947.

Rehearing Denied Jan. 9, 1948.

Martin, Moore & Brewster and Arthur Lee Moore, all of Fort Worth, for appellant.

Barwise & Wallace and Seth Barwise, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

J. W. Heflin was killed in a collision between the automobile he was driving and a train belonging to appellee. His widow brought this suit for damages. The jury, in response to special issues, found the operators of the train guilty of negligence on three counts. The jury also found that Heflin was guilty of contributory negligence in failing to keep a proper lookout for the train, but absolved him from contributory negligence on the other counts submitted in the charge.

Mrs. Heflin appeals from a judgment denying her any recovery, on the sole ground of jury misconduct.

Three jurors testified at the hearing on the motion for new trial. The testimony of Smith, who was foreman of the jury, was in substance as follows: The jury first answered the questions relating to the negligence of the operators of the train. Next they answered the damage issue. The issue next following the damage issue was No. 14, which inquired whether Heflin failed to keep a proper lookout for the train. No. 15

was the negligence issue, and No. 16 was the proximate cause issue. Smith remembered these issues. The jurors had a considerable discussion about how these issues should be answered. They spent more time on that question than on any other. They were hung on that question. Smith wanted to answer in the negative, because they did not show any negligence on Heflin's part. The jury stayed in there over an hour, and, to quote from his testimony, "none of the other jurors would give up because they said they had given the railroad employees the blame for all their faults. So one of the fellows, I don't remember which one, said 'It won't make any difference how you answer that question anyway, since we have already given the railroad the fault, and she will get her money just the same.' Well, I don't know myself. I never served on a Jury and didn't know anything about the laws. So, rather than hang that Jury, since the discussion was brought up that it would not make any difference, me and the other fellow went with the other ten and answered the question in the affirmative." He would not have answered the question in the affirmative if it had not been for that discussion, because "there wasn't any evidence there." Smith wanted to talk to the court, and the rest of the jury thought it was permissible, but the bailiff told them they would have to submit their question in writing, and it was hard to frame the question as to the effect of their answers, so it was discussed again that it would not make any difference how they answered the question, so they "dropped it and let it go."

On cross examination Smith was asked if defendant's counsel had not interrogated him and asked him if he would take the case and decide it according to the evidence and the charge of the court, answering the questions as he saw them regardless of whom it hurt or helped, and Smith answered in the affirmative. When he was selected and sworn as a juror, he told the court he would perform his duties as a juror in accordance with the court's instructions. He was mindful of the instructions of the court to answer the questions based on the evidence in the case, and tried to do that. As foreman, he wrote the answer to the 14th issue. There was some discussion about somebody saying that it wouldn't make any difference how the juror answered the question relative to lookout. Smith was one of those who said it wouldn't make any difference. Some member of the jury brought out the fact that it wouldn't make any difference, and Smith agreed with him—he did not think it would make any difference. He "expects" he was violating the instructions of the court in considering the effect of their answers. The answer of the jury is not the proper answer under the evidence, but is the answer Smith agreed on.

On re-direct he said he answered it that way based on the discussion that it would make no difference how he answered it.

The juror Dobson testified that they first answered the issues pertaining to negligence of the train operators, and then the damage issue, and then took up No. 14, relating to the failure of Heflin to keep a lookout. They had considerable discussion as to whether or not Heflin was negligent. There was also a discussion as to whether it would make any difference whether the question was answered one way or the other. Some thought it would make a difference and some thought that it would not. After further discussion the question was answered. Dobson would have answered the question in the negative if it had not been for the discussion by the jurors to the effect that it would not make any difference how the question was answered. There was more discussion on the question whether it would make a difference how the issue was answered, than on anything else.

On cross-examination he testified somewhat as did the juror Smith.

The juror McGee also said that they first answered the issues relating to the train operators' negligence, then answered the damage issue, then took up for consideration the issue concerning Heflin's failure to keep a lookout. It was then that the jury sent word out that they wanted to ask the court a question. During the time they were considering such issue one of the jurors made a remark to the effect that it would not make any difference how they answered the question, since they had al-

ready answered that the operators of the train were negligent, and the jury discussed it quite a bit. On cross-examination he testified somewhat as did the jurors Smith and Dobson. Like the others, he said that he tried to answer the issues under the directions the court had given them.

All three testified that the court, at the request of counsel for plaintiff, polled the jury when the verdict was brought in, and all of them said that they told the court in response that the answers shown in the verdict were their answers.

The trial court overruled the motion for new trial, but made no specific findings of fact as to whether said misconduct had or had not occurred.

■ In Walker v. Quanah, A. & P. Ry. Co., Tex.Com.App., 58 S.W.2d 4; Pryor v. New St. Anthony Hotel Co., Tex.Civ. App., 146 S.W.2d 428, writ refused; and Pope v. Clary, Tex.Civ.App., 161 S.W.2d 828, writ refused for want of merit, there was presented the same situation which we have here. After the jury had found the defendant guilty of negligence proximately causing the injury, the question was raised by some of the jurors as to whether or not a finding of contributory negligence would defeat a recovery by the plaintiff. In each of said cases, as in this one, the opinion of the jury concerning the question of contributory negligence was divided, but after such discussion they agreed to answer the issues in such way as to find contributory negligence. In all of said cases the misconduct of the jury was held to be reversible error.

In Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622; and also in White Cabs v. Moore, Tex.Sup., 203 S.W.2d 200, the jury were divided on a question until after an improper discussion took place in the jury room, and in each case it was held that the misconduct of the jury constituted reversible error.

Appellee here contends that the testimony of the three jurors on the new trial hearing was so uncertain and contradictory as to warrant an implied finding by the trial court that the misconduct did not occur.

In Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770, 773, it is said:

"A juror's testimony upon such hearing may be so contradictory and inconsistent that the trial court in exercising its privilege to pass upon the credibility of the witness may be justified in disregarding his entire testimony."

In Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, it was held that the trial court was justified in finding that the misconduct did not occur, in view of the inconsistency between the evidence given by the juror on direct examination and that given by him on cross-examination.

In Price v. Biscoe, 141 Tex. 159, 170 S.W.2d 729, the order of the trial overruling the motion for new trial was upheld where the testimony of the jurors was conflicting as to whether or not the misconduct occurred.

■ We can find no reasonable basis in the record for holding that the misconduct did not occur. There is neither indefiniteness, contradiction, conflict, nor inconsistency in the testimony of the three jurors that they first answered the issues relating to the negligence of the train operators, that they next answered the damage issue, that they next took up for consideration the question of Heflin's failure to keep a proper lookout, that there was a disagreement among the jurors about how that issue should be answered, that more time was spent on that issue than on any other, that there then followed a discussion to the effect that plaintiff would recover whether the issue was answered in the affirmative or in the negative since the jury had already found negligence on the part of the train operators, and that after such discussion a verdict was reached. If there is any conflict or inconsistency in the testimony of the jurors, it is only with respect to their mental processes employed in reaching the verdict. In Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; Price v. Biscoe, 141 Tex. 159, 170 S.W.2d 729, and many other cases which could be cited, it is held that the

juror may not impeach or destroy his verdict by testifying to the mental processes by which he reached it, nor may the court consider the fact that the jurors testified that their verdict was not affected by the misconduct in passing upon the question of probable injury.

 Paraphrasing the language in City of Houston v. Quinones, supra, 142 Tex. 282, 177 S.W.2d 259, at page 263, from an examination of all the relevant facts, we conclude that the misconduct of the jurors was calculated to work an injury to appellant, and that it probably did so, and that for such reason the cause should be remanded for a new trial.

Reversed and remanded.