Arthur Keith HEARN, by N/F, Appellant,

v.

MRS. BAIRD'S BREAD CO. et al., Appellees.

No. 15133.

Court of Civil Appeals of Texas.

Dallas.

Oct. 26, 1956.

Rehearing Denied Nov. 30, 1956.

---

Jack Y. Hardee, Athens, and Yarborough, Yarborough & Johnson, Dallas, for appellant.

Justice & Justice, Athens, and Ramey, Calhoun, Brelsford & Hull, and Jack W. Flock, Tyler, for appellees.

DIXON, Chief Justice.

This is an appeal from a judgment for defendant in a personal injury negligence case involving an intersectional collision between appellee's bread truck and a car driven by the mother of a nineteen-months-old child. The suit was brought in behalf of the child.

A jury answered all issues in favor of appellee including an issue in regard to the speed at which appellee's truck was being operated at the time. The jury also found that the failure of the child's mother to yield the right of way was the sole proximate cause of the collision; and further that the mother had failed to keep a proper lookout, had failed to keep her car under proper control, had failed to make a proper application of her brakes, and had failed to sound her horn as she approached the intersection. However with reference to the last four of the above findings, the jury answered in each instance that such failure was not the sole proximate cause of the collision.

No issues were submitted inquiring whether any of said last four findings was a proximate cause of the collision.

Appellant's first point on appeal, raising the question of jury misconduct, presents the most serious issue before us. Appellant says that one of the jurors stated during the jury's deliberations that he had had experience driving a truck with a governor on it, and that a truck with a governor on it could not go as fast as appellant's witnesses had testified it did; which statement influenced at least one juror in answering the issue regarding the truck's speed. The evidence was undisputed that the truck did have a governor on it.

We quote portions of the testimony presented at the hearing on appellant's motion for new trial:

Juror H. D. Hines (Direct Examination): "Q. Mr. Hines, do you recall any statement by any juror during the deliberations as to whether or not he, referring to a particular juror, had ever driven a truck with a governor on it? A. I do.

"Q. Will you tell the court, as near as you can recollect, what the juror said, with reference to driving a truck with a governor on it? A. Well, the best I can remember, the question came up about the governor on the truck, and he said he had had experience driving a truck with a governor, and that he talked quite a bit about it.

"By the Court: Well, what did he say, is what the attorney asked you. A. Well, he just said he didn't believe the bread truck was going over 30 miles an hour, due to the fact that he had had experience with one. * * *

"Q. Did he or not say he had driven a truck with a governor on it? A. He did. * * *

"Q. Had you ever driven a truck with a governor on it? A. I never have. I don't know anything about one. * * * (On Cross-Examination) * * *

"Q. I see. Of course, you remember that there was evidence introduced in this case by the defendants, to the effect that there was a governor on the truck? A. Yes. * * *

"Q. Sure, you were just trying to consider the evidence that came in from the witness stand, were you not? A. I was thinking about that and when he made the statement that he had had experience, it had the influence. I didn't know anything about one."

Juror Virgil Weeden:

"Q. Mr. Weeden, during the course of the deliberations and discussions, while the jury was in the jury room, discussing their answers to be made to the special issues, did you hear any statement by any juror, with reference to driving a truck with a governor on it? A. Yes, sir. * * *

"Q. Will you tell the Court, as best you can recollect, what statement the juror made, with reference to driving a truck with a governor on it? A. Well, the best I can remember, he said he had driven a truck with a governor on it—and that's just about all * * *

"Q. Your best recollection of what he said? A. I believe he said he had driven a truck with governors on them, I think that statement if I remember, that turning those two corners * * *

"Q. Mr. Weeden, there is so much noise, I can't hear you. A. Turning those two corners he didn't believe he could go that fast. * * *

"Q. Mr. Weeden, in your affidavit in July, on July 19, 1955 appears this statement: 'One of the jurors said he had experience driving a truck with a governor under similar circumstances and he knew where this place was, and that the distance traveled and the turns the bread truck had to make, it was impossible for the bread truck to have been traveling more than 30 miles an hour.' Now, that's in your statement, is it not? * * * A. Yes. * * *

"Q. Mr. Weeden, after having refreshed your memory, reading your affidavit of July 19, 1955, will you tell the Court what the juror said, with reference to having driven a truck with a governor on it?

"Mr. Flock: It is repetitious, Your Honor, and leading.

"By the Court: Overrule the objection.

"Q. Tell Judge Johnston what he said about having driven a truck with a governor on it. A. Well, driving a truck with a governor on it * * *

"By the Court: What the juror said, Mr. Weeden.

"Q. What the juror said. A. He said, 'I believe he couldn't go over what the governor was set and turn corners with an excess speed, he might not make it.' * * * (Cross-Examination) * * *

"Q. Where was the statement made? A. In the jury room. * * *

"Q. Whatever statement it was didn't influence you any, did it, Mr. Weeden? A. Well, some. * * * (Redirect)

"Q. Mr. Weeden, was the statement while you were in the jury room there? A. Yes, sir.

"Q. During the deliberations? A. Yes, sir."

Juror Tom Lambright: "* * * Q. Do you now recall whether or not any juror made the statement here, in your deliberations, that he had experience in driving a truck? A. Well, I heard him discussing it. I still don't know which one it was. * * *

"Q. I mean did a juror make any statement that he had ever driven a truck?

"By the Court: Just answer yes or not, Mr. Lambert, if you heard a juror make that statement? A. Yes, I guess. * * *

"Q. Mr. Lambert, will you state whether or not during the deliberations, if one of the jurors said that he, from his own ex-perience, knew that that bread truck could not have been going over 30 miles an hour? * * * A. Yes, sir, I heard them discussing it, I don't remember what they said about it. * * *

"By the Court: I am admitting the statement, but this Court is not going to consider what is in the statement for any purpose, and I am admitting it in order that the Court of Civil Appeals may see the whole record and have it before them. * * * The State of Texas County of Henderson On this the 19th day of July, 1955 personally appeared T. A. Lambright. who upon his oath disposes and says, that he was one of the jurors in the Arthur Keith Hearn vs. Mrs. Baird's Bread Company, et al, which was tried in the District Court of Henderson County, Texas during the week of July 11, 1955. In deciding and deliberating on the case one of the jurors mentioned the fact that he had driven a truck with (a governor) and that it would be impossible for the bread truck to have been traveling as fast as alleged, to-wit, 45 m.p.h., because he had to slow down and go around a curve and he knew from his own experience that the bread truck could not have been going over 30 miles per hour. This argument of this juror was put forth when we were discussing the speed of the truck, and following this discussion the answers to the special issues were that the bread truck was not traveling over 30 miles per hour, and that was the main reason I voted to answer those issues like we did. * * * In answering the issues as to whether or not the bread truck was exceeding 30 miles per hour, I considered the following and the following influenced me in answering the issues like I did: The juror said that he knew where this place was, and that the distance traveled and the turns the bread truck had to make, it was impossible for the bread truck to have been traveling more than 30 miles per hour, and after hearing this argument by said juror I agreed to answer that the truck was not exceeding 30 miles per hour and said argument influenced me in my answer"

Appellee introduced testimony from seven of the jurors. Each testified that he did not hear any juror make a statement concerning his personal experience in driving a truck with a governor. However it was undisputed that while the jury was deliberating, the jurors would sometimes be separated into groups at which times it would be impossible for jurors in one group to hear what the jurors in other groups were saying. None of the jurors presented as witnesses by appellee gave positive testimony that the statement in question was not made. Their testimony was that they had not heard it.

■ Appellee takes the position that the testimony was conflicting as to whether the alleged act of misconduct occurred; and that the trial court by overruling appellant's motion for new trial made an implied finding that the alleged misconduct did not occur, which finding, being based on conflicting evidence, is binding on this Court.

We do not believe that the rule of law which appellee seeks to invoke is applicable here for the reason that there is really no conflict in the evidence as to whether the act of misconduct occurred. Three of the jurors gave positive testimony that the statement in question was made by one of the jurors while the jury was deliberating. Although seven of the jurors said they did not hear the statement, no one of them went so far as to actually deny that it was made. In fact the testimony, as we have already pointed out, is that the jury at times broke up into groups while in the jury room, and jurors in one group could not hear what may have been said in other groups.

■ In our opinion the evidence establishes the fact that the act of misconduct not only occurred, but that its effect on at least one juror, maybe more, resulted in harm to appellant. Rule 327, Texas Rules of Civil Procedure. We cannot agree with appellee that the occurrence merely shows the mental processes by which a juror reached his conclusion, as stated in Bar-

rington v. Duncan, 140 Tex. 510, 169 S.W. 2d 462. We think the applicable rule is that when a juror makes a statement during a jury's deliberation, based on his own personal experience in the use of an appliance, the use and capabilities of which appliance are not matters of common knowledge, and the statement affects the answers of even one juror, the statement amounts to misconduct and the verdict is vitiated. Tian v. Warren, Tex.Civ.App., 271 S.W.2d 453; Crawford v. Detering, 150 Tex. 140, 237 S.W.2d 615; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259; Texas Utilities Co. v. West, Tex.Civ.App., 95 S.W.2d 717; Dallas Ry. & Term. Co. v. Burns, Tex.Civ.App., 60 S.W.2d 801; Maries v. J. I. Case Threshing Machine Co., Tex. Civ.App., 204 S.W. 235; Whitehead v. Texas & P. Ry. Co., Tex.Civ.App., 84 S.W.2d 779 (only one juror need be influenced); 41–B Tex.Jur. 385; 89 C.J.S., Trial, § 463, pp. 97–99.

In particular, the case of City of Houston v. Quinones, supra [142 Tex. 282, 177 S.W. 2d 263], seems to us to be in point here. It involved injuries sustained by a three-year-old child from a mowing machine operated by a city employee. One of the jurors stated that he had run a mowing machine and he knew that from the driver's position on the seat of the mower, he could have seen over some weeds and could have seen the child. Our Supreme Court held that the statement of the juror as to his experience in operating a mower "was clearly jury misconduct"; and further: "The rule has long prevailed in this State that jurors may not receive new testimony during their deliberations."

■ Appellee argues that even if the misconduct occurred, influencing the jury's answers to issues concerning the speed of appellee's truck, it nevertheless was not material to the outcome of the trial, hence does not constitute reversible error. The reason advanced for this view is that the jury misconduct did not and could not have in any way influenced the jury's answer to

the key issue wherein it was found that the failure of appellant's mother to yield the right of way at the intersection was the sole proximate cause of the collision.

We do not go along with appellee's argument. It is appellant's contention that appellee's truck did not enter the intersection until after appellant's car entered it, but that because of its excessive speed the truck covered the intervening distance to the intersection, then into it before appellant's car could complete its crossing of the intersection. If the jury believed the testimony of appellant's witnesses as to the speed of appellee's truck, it might well have found that appellant's car had the right of way, and that the speed of appellee's truck was a proximate cause of the collision. In such event the jury may well have answered that appellant's car did not fail to yield the right of way, and having so answered, the jury would not then have been called on to answer the issue inquiring whether appellant's failure to yield the right of way was the sole proximate cause of the collision. As we believe that the speed of the truck has a connection with the question of right of way at the intersection, we cannot say that the jury misconduct was immaterial to the outcome of the lawsuit. Believing that the jury's misconduct harmed appellant and constituted reversible error, we sustain appellant's first point.

In his second point appellant alleges that another act of misconduct occurred, in that a juror stated that he knew where the place was where the accident occurred, and that it was impossible for the bread truck to have been traveling more than 30 miles per hour. The evidence adduced at the hearing on appellant's motion for new trial fails to establish the occurrence of this alleged act of misconduct. Appellant's second point is overruled.

In a third point appellant says that the overwhelming preponderance of the evidence is contrary to the jury findings and a new trial should have been granted.

Appellee on the other hand says that the testimony of appellant's mother as to how the accident occurred is too preposterous for belief. The statement of facts is 321 pages long not including about 20 exhibits. Nine witnesses testified in behalf of appellant. Three witnesses testified in behalf of appellee. Without setting out the evidence, we shall simply say that it is conflicting and the credibility of the witnesses was for the jury. Appellant's third point is overruled.

In another point appellant contends that the court committed error in overruling appellant's motion to instruct the jury that a child three years of age was not competent to testify. The child was nineteen months old at the time of the collision. It was three years old at the time of the trial. It is common knowledge that a child of such tender years does not know the meaning of an oath. In our opinion the instruction was unnecessary. Appellant's fifth point is overruled.

While appellant's eyewitness John W. Sherman was on the stand, he testified that on a date prior to the trial he had talked to Jack Hardee, one of appellant's attorneys, about the collision and how it occurred. Jack Hardee had then prepared a written statement which the witness had signed. On cross-examination the following testimony was elicited:

"Q. Can you observe this writing here, where it says, 'at least 45,' that's in the sentence that Mr. Yarborough read to you? 'At least 45.' Was that put in there at the same time the rest of the statement was written? A. I didn't have my glasses, I didn't see it.

"Q. Do you know whether Mr. Hardee wrote down everything you told him, as you told him? A. I suppose he did.

"Q. You don't know whether he did or not? A. No, sir, I was busy.

"Q. Is any of that handwriting your handwriting? A. That is.

"Q. Just your signature? A. Yes, sir.

"Q. But the part, the sentence that Mr. Yarborough read to you, that is not in your handwriting at all? A. No, sir."

In rebuttal to the above quoted testimony Jack Hardee was sworn as a witness and asked this question and gave this answer: "Q. With reference to this wreck, did you give Mr. Sherman any information at all or tell him what to say at all in regard to how this accident happened? A. No." Appellee's attorney at once objected and upon appellee's request the court instructed the jury not to consider the question. This action on the part of the court is assigned as error.

We think appellant's position is well taken. Ordinarily the question would not have been proper. But here the authenticity of the statement had been challenged on cross-examination. The implication was that the statements written down were Hardee's statements, not those of the witness. We believe that under the circumstances the excluded question and answer, since they were offered by way of rebuttal, should have been allowed to remain for the jury's consideration. Appellee says that the error, if it was error, was cured by the admission later of testimony by Hardee which in substance and effect was about the same as the rejected testimony. We do not agree with appellee, but we shall not belabor the question, as we have concluded that a reversal is necessary anyway because of our sustaining appellant's first point. We sustain appellant's seventh point.

 Lastly appellant complains because the witness Sherman, an eyewitness, on appellee's objection was not allowed to answer this question concerning the driver of appellee's truck: "About how fast did he ordinarily run passing down at the end of that alley?" We think that appellant's complaint is without merit. Habit evidence is not admissible where there is an eyewitness to an accident. Missouri, K. & T. R. Co. v. McFerrin, Tex., 291 S.W.2d 931;

Lands v. York Oil Corporation, Tex.Civ. App., 280 S.W.2d 628; Missouri, K. & T. R. Co. v. Johnson, 92 Tex. 380, 48 S.W. 568; McCormick and Ray, Texas Law of Evidence, Vol. 2, page 357, Section 1513. Appellant's eighth point is overruled.

Points not discussed in this opinion have been waived by appellant.

The judgment of the trial court is reversed and the cause remanded for another trial.