martinez v. state

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-356-CR

LEON MARTINEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371
ST
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)
------------

Appellant Leon Martinez appeals from his conviction for assault causing bodily injury to a family member.  In three points, he challenges the admissibility of trial testimony from three witnesses.  We affirm.

Appellant began dating Monica Zapata, the victim, in December 2000.  Around August 2001, appellant moved in the house Zapata shared with her mother.  Around October 2001, however, their relationship began to deteriorate, and on December 11, 2001, Zapata told appellant that she wanted him to leave.

The following day appellant became angry with Zapata, and they began to argue.  Appellant would not let Zapata leave for work and took her keys away to prevent her from leaving.  He also initially refused to let her call her employer to explain that she would be absent that day.  Later appellant let Zapata call her employer.

After she called her employer, Zapata lay down in bed in the other room.  Appellant got in bed with Zapata and attempted to put his arm around her, but she would not let him.  Her refusal led to an argument that resulted in appellant’s choking Zapata and threatening to kill her.  Zapata could not breathe for about thirty to sixty seconds, and when appellant finally released her, she went to the bathroom and vomited.  This incident was the basis of the offense for which appellant was charged and convicted.

In appellant’s first and second points, he argues that the trial court erred in admitting into evidence extraneous offenses that showed appellant made numerous threatening telephone calls to Zapata at home and at work after committing the offense and being kicked out of Zapata’s house.  Appellant challenges the admissibility of the evidence under rules 403 and 404(b).  
Tex. R. Evid. 
403, 404(b).  Testimony regarding the phone calls came from Zapata; Shonda Stokes, a friend and work colleague of Zapata; and Officer Chris Simmons, an investigating officer.  We review a trial court's ruling admitting testimony under an abuse of discretion standard.  Thus, we will uphold the trial court's decision if it is within “the zone of reasonable disagreement.”  
Salazar v. State
, 38 S.W.3d 141, 153-54 (Tex. Crim. App.), 
cert. denied
, 534 U.S. 855 (2001).

Rule 404(b) embodies the established principle that a defendant is not to be tried for collateral crimes or for being a criminal generally.  
Tex. R. Evid
. 404(b); 
Nobles v. State
, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992);
 Booker v. State
, 103 S.W.3d 521, 530 (Tex. App.—Fort Worth 2003, pet. ref’d) (op. on reh'g).  Consequently, extraneous offenses are not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense
.  Tex. R. Evid. 
404(b); 
Booker
, 103 S.W.3d at 529; 
Martin v. State
, 42 S.W.3d 196, 199-200 n.2 (Tex. App.—Fort Worth 2001, pet. ref'd).  An extraneous offense, however, has noncharacter-conformity relevance where it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  
Tex. R. Evid. 
401; 
Powell v. State
, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).  That is, extraneous offense evidence that tends to make an elemental or evidentiary fact more or less probable or tends to rebut some defensive theory is relevant beyond its tendency to prove a person's character or that he acted in conformity therewith.  
Montgomery v. State
, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op. on reh'g); 
Johnson v. State
, 932 S.W.2d 296, 301 (Tex. App.—Austin 1996, pet. ref'd).  Consequently, evidence of other crimes or extraneous misconduct may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  
Tex. R. Evid
. 404(b); 
Booker
, 103 S.W.3d at 529-30.  Such evidence may also be introduced to rebut a defensive theory.  
Powell
, 63 S.W.3d at 439-40.  “By raising a defensive theory, the defendant opens the door for the State to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has common characteristics with the offense for which the defendant was on trial.”  
Jones v. State
, 119 S.W.3d 412, 421 (Tex. App.—Fort Worth 2003, no pet.); 
Roberts v. State
, 29 S.W.3d 596, 601 (Tex. App.—Houston [1
st
 Dist.] 2000, pet. ref'd).

On cross-examination of Zapata, appellant’s counsel asked her if she was afraid of appellant, to which she responded that she was afraid of him.  Following this response, counsel then asked Zapata about several instances since the offense when she visited appellant, implying that Zapata was not afraid of appellant.  The State contends that appellant sought this testimony to show that Zapata was not afraid of appellant because the offense never occurred.  Furthermore, the evidence regarding Zapata’s visiting appellant after the offense could also have been introduced to show that appellant did not intend to commit the offense:  If Zapata had no fear of appellant, then perhaps the offense did not occur, and no intent existed.  

In response to the testimony, the State sought to rebut appellant’s defensive theory with testimony from three witnesses regarding appellant’s repeated telephone calls to Zapata following the incident, both at home and work, and that appellant threatened Zapata in several of those calls.  This evidence would allow the State to rebut the theory that Zapata did not fear appellant.  

We agree with the State that the extraneous offense evidence was admissible to rebut the defensive theory that because Zapata was not afraid of appellant, the offense did not occur.  The evidence of the phone calls tends to make the defensive theory less probable.  Although the threatening phone calls do not share “common characteristics” with the actual assault offense as charged in the indictment, the extraneous offense evidence involves threats, and appellant threatened to kill Zapata during the commission of the offense.  Thus, the circumstances surrounding the offense were similar to the circumstances of the extraneous offenses.  Furthermore, the extraneous offense evidence also allows the State to rebut the presumption that appellant had no intent to commit the offense.
(footnote: 2)  Accordingly, we hold the trial court’s ruling to admit the testimony of the three witnesses under rule 404(b) was within the zone of reasonable disagreement.  

Appellant also challenges the admissibility of the evidence under rule 403.
 Tex. R. Evid.
 403.  If a trial court determines that evidence of other crimes or extraneous misconduct has relevance aside from character conformity, and a timely, proper rule 403 objection is made, the trial court must make a balancing determination under rule 403.  
Montgomery
, 810 S.W.2d at 388-89.  Rule 403 provides that “[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.”  
Tex. R. Evid
. 403.  Only “unfair” prejudice provides the basis for exclusion of relevant evidence.  
Montgomery
, 810 S.W.2d at 389.  Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one.  
Id.
  A presumption exists that relevant evidence will be more probative than prejudicial.  
DeLeon v. State
, 77 S.W.3d 300, 315 (Tex. App.—Austin 2001, pet. ref’d).  In evaluating the trial court's determination under rule 403, a reviewing court is to reverse the trial court's judgment “rarely and only after a clear abuse of discretion,” recognizing that the trial court is in a superior position to gauge the impact of the relevant evidence.  
Mozon v. State
, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999);  
Montgomery
, 810 S.W.2d at 389.

The trial court's balancing determination must be measured against the relevant criteria by which a rule 403 decision is made.  
Mozon
, 991 S.W.2d at 847.  The relevant criteria in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include:  

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;  

(2) the potential the other offense evidence has to impress the jury “in some irrational but nevertheless indelible way”;  

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; [and] 

(4) the force of the proponent's need for this evidence to prove a fact of consequence, that i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. 

 
Id. 
 When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it. 
 Montgomery
, 810 S.W.2d at 392.

Whether the offense actually occurred was the key issue at trial.  The testimony regarding the telephone calls makes the defensive theories very unlikely.  The testimony regarding the telephone calls was also “no more heinous” than the assault offense.  
Taylor v. State
, 920 S.W.2d 319, 323 (Tex. Crim. App.) (holding evidence of extraneous murder admissible in capital case), 
cert. denied
, 519 U.S. 951 (1996).  Thus, the evidence was compelling and not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose.  
Id.

 The State questioned three out of six witnesses regarding the telephone conversations during guilt-innocence.  Approximately fifteen pages of Zapata’s seventy-two pages of testimony involved the telephone calls; seven out of seventeen pages of Stokes’s testimony involved calls from appellant; and four out of five pages of Officer Simmons’s testimony involved the telephone calls.  Although a majority of Officer Simmons’s testimony and a great deal of Stokes’s testimony involved appellant’s calls, the victim’s testimony did not focus on appellant’s calls, nor was the subject of the telephone calls the main focus of the State’s case in general.  The main focus of the case was the prosecution of appellant for assault, and the weight of the evidence supporting the conviction was overwhelming.  Furthermore, the State did not emphasize the telephone calls during closing argument, but instead discussed the fact that Zapata continued to see appellant because she still loved him and “wanted to make things end on a good note.”  The trial court also instructed the jury that it could only consider the extraneous offense evidence for the limited purpose of determining the weight to be given to the witnesses’ credibility or to be given a “defensive theory.”  The jury was instructed that it could not consider the evidence to prove that appellant committed the offense for which he was charged.  The jury presumably followed the court’s instructions.  
Bauder v. State
, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). 

Finally, although Zapata testified for the State that she visited appellant after the offense because she missed him, this evidence may not have eliminated any doubt placed in the minds of the jury regarding whether the offense occurred.  As a matter of fact, this evidence also had the potential to hurt the State’s case because it could lead the jury to question why Zapata still cared for a man who choked and threatened to kill her, unless, of course, Zapata fabricated the offense.  Thus, the State needed to put on the evidence of the telephone calls in order to eliminate potential doubt created by the defense in its cross-examination of Zapata.  Accordingly, we hold the trial court did not abuse its discretion in admitting the evidence under rule 403.  We overrule appellant’s first and second points. 

In appellant’s third point, he argues the trial court erred in admitting hearsay testimony from Stokes.  At trial, Stokes testified that Zapata called her the day after the offense and told her what happened.  Stokes said Zapata was “crying, upset, confused, didn’t know what to do.”  The State then indicated that it was going to ask about the contents of the conversation, and appellant objected on hearsay grounds.  The State responded that the testimony fell under the excited utterance exception, and the trial court overruled the objection.  Stokes then testified that Zapata told her that appellant had choked her.

The Texas Rules of Evidence define hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”  
Tex. R. Evid. 
801(d).  The rules of evidence provide an exception to the hearsay rule for excited utterances.  
Tex. R. Evid. 
803(2).  An excited utterance is “[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.”  
Id.
  The foundation of this exception is the belief that the statements made are involuntary and do not allow the declarant an adequate opportunity to fabricate, ensuring their trustworthiness.  
Reyes v. State
, 48 S.W.3d 917, 919 (Tex. App.—Fort Worth 2001, no pet.).

When determining whether a statement qualifies as an excited utterance, it is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event;  these are merely factors to be considered in determining whether the statement is admissible as an excited utterance.  
Wood v. State
, 18 S.W.3d 642, 652 (Tex. Crim. App. 2000); 
Lawton v. State
, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995),
 cert. denied
, 519 U.S. 826 (1996).  More commonly known elements of an excited utterance are:  (1) the statement must be the product of a startling occurrence;  (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence; and (3) the statement must be related to the circumstances of the startling occurrence.  
Couchman v. State
, 3 S.W.3d 155, 158 (Tex. App.—Fort Worth 1999, pet. ref'd).  The critical determination, however, is “whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event” or condition at the time of the statement.
(footnote: 3)  
Salazar
, 38 S.W.3d at 154.

Although the actual assault occurred approximately twenty hours before Zapata told Stokes what happened, the evidence shows that Zapata was kept in a constant state of fear of appellant from the time of the assault until Zapata spoke with Stokes.  
See Zuliani v. State
, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003).  After choking and threatening to kill Zapata, appellant initially would not let her leave the house to go to her doctor’s appointment.  After later letting her leave, he called her while she was at her appointment.  When she returned from her appointment, he was at her house.  Zapata had her mother force appellant to leave.  After appellant left, he called her later that day and told her, “Mark my word, I’ll see you in the morning.”  Zapata then called the police to file a report and requested a protective order to keep appellant away from her.  Zapata became frightened and spent the night at a friend’s house.  Appellant made approximately seventy calls to Zapata from the day of the offense until the following afternoon.

The next morning Zapata called Stokes and asked her to meet her in their work parking lot because appellant knew where she worked and she did not feel safe walking to the building alone.  After arriving to work with Stokes, Zapata told Stokes that appellant had choked her.  Given the sequence of events following the offense, the trial court’s decision to admit the evidence under the excited utterance exception was within the zone of reasonable disagreement because Zapata was likely still dominated by the emotion, excitement, fear, or pain of the occurrence.  We overrule appellant’s third point.

Having overruled appellant’s points on appeal, we affirm the trial court’s judgment.

SAM J. DAY

JUSTICE

PANEL F: DAUPHINOT and HOLMAN, JJ.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DAUPHINOT, J. filed a concurring and dissenting opinion.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  February 12, 2004

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-356-CR

LEON MARTINEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371
ST
 DISTRICT COURT OF TARRANT COUNTY

------------

CONCURRING AND DISSENTING OPINION

------------

While I concur in the result, I dissent from the majority’s holding that a complainant’s statements in a telephone conversation twenty hours after the exciting event are excited utterances because the complainant was still upset.  I fear that we have lost sight of the purpose behind the recognition of the excited utterance exception.  

An excited utterance is not any statement made when a person is “excited” or “upset.”  For a statement to qualify as an excited utterance, the declarant must have been more than upset, more than excited.  It follows, then, that testimony that the declarant seemed “upset” and “emotional” before she uttered the statement is insufficient to satisfy the requirement that the declarant be “in the instant grip of violent emotion,” rendering her incapable of fabrication.
(footnote: 1)  She must have been dominated by the overwhelming emotion arising from the event or condition at the time the statement was made.
(footnote: 2)  Furthermore, the utterance must have been a spontaneous response to an external shock, made from impulse rather than reason and reflection.
(footnote: 3)  “The circumstances must show that it was the event speaking through the person and not the person speaking about the event.”
(footnote: 4)
 An excited utterance, therefore, is admissible because it is spontaneous and not the result of thought or contemplation.  In this case, there was nothing spontaneous about the complainant’s telephone call to Stokes twenty hours after the alleged incident occurred.  After the assault but before the telephone conversation, events unconnected to the alleged assault occurred.  For example, the complainant went to a previously scheduled doctor’s appointment alone.  Additionally, after she returned home, her mother helped her persuade Appellant to leave.  These two contacts allowed her not only time to discuss the situation but also ample opportunity to reflect on it before she called Stokes.  Unlike the complainant in 
Zuliani
, the complainant in this case did not spend twenty hours curled up in a ball and confined with Appellant.  She had time and space to free herself from any “grip of violent emotion” that she might have experienced immediately after the alleged assault.  

The complainant called Stokes simply to relate what Appellant had done to her and to explain why she wanted Stokes to meet her in the parking lot at work.  By no stretch of reasoning can the complainant’s part of this conversation be contorted into a series of excited utterances.

The statements, however, do fall within rule 803(3) as statements of the complainant’s then existing mental, emotional, or physical condition.
(footnote: 5)  In the conversation, the complainant explained that she wanted Stokes to meet her at work because she was afraid and injured.
(footnote: 6)  I concur in the result because the statements addressed in Appellant’s third point of error were admissible on this ground. 

LEE ANN DAUPHINOT

JUSTICE

DELIVERED:  FEBRUARY 12, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
While the State did not specifically argue at trial that the extraneous offense evidence was admissible to show intent, we may affirm a trial court’s ruling on any ground reasonably supported by the record and that is correct on any theory of law applicable to the case.  
See Villarreal v. State
, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 

3:
Appellant only challenges the applicability of the excited utterance exception on these grounds.

1:
Zuliani v. State
, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003);
 King v. State
, 631 S.W.2d 486, 491-92 (Tex. Crim. App.), 
cert. denied
, 459 U.S. 928 (1982).

2:
Zuliani
, 97 S.W.3d at 596.

3:
Id
. at 595.

4:
First S.W. Lloyds Ins. Co. v. MacDowell
, 769 S.W.2d 954, 959 (Tex. App.—Texarkana 1989, writ denied); 
see also City of Houston v. Quinones
, 142 Tex. 282, 177 S.W.2d 259, 262 (1944); 
Malone v. Foster
, 956 S.W.2d 573, 580 (Tex. App.—Dallas 1997), 
aff’d
, 977 S.W.2d 562 (Tex. 1998).

5:
Tex. R. Evid.
 803(3).

6:
See Martinez v. State
, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000).

COMMENTS AND ANNOTATIONS
Comment 1:
majority by justice day; concurrence and dissent by justice dauphinot